UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------
WOO HEE CHO,

                       Plaintiff,                    **MEMORANDUM & ORDER**
                                                                    16-CV-4811 (MKB)
                       v.

MAXIE OQUENDO, LAGUARDIA AIRPORT,
PORT AUTHORITY OF NEW YORK AND NEW
JERSEY, TRANSPORTATION SECURITY
ADMINISTRATION and THE UNITED STATES
OF AMERICA,

                       Defendants.
-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Plaintiff Woo Hee Cho commenced the above-captioned action against Defendants Maxie Oquendo, LaGuardia Airport, the Port Authority of New York and New Jersey (the "Port Authority"), the Transportation Security Administration (the "TSA"), and the United States of America on August 26, 2016, based on a TSA agent's sexual assault of Plaintiff at LaGuardia Airport in August of 2015. (Compl., Docket Entry No. 1.) Plaintiff brings claims for sexual assault and battery, intentional infliction of emotional distress, false imprisonment and *Bivens* relief[1] under the Fourth Amendment against Oquendo[2]; for negligent hiring and supervision against the Port Authority and LaGuardia Airport; and for negligence against TSA and

---

    [1] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

    [2] Oquendo did not appear in the action. On January 19, 2017, Plaintiff requested a certificate of default as to Oquendo, and on January 23, 2017, the Clerk of Court entered an order of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (*See* Docket Entry Nos. 14, 15.) Plaintiff has not moved for a default judgment against Oquendo.

supervisory liability and negligent training and supervision against the United States, pursuant to the Federal Tort Claims Act (the "FTCA"). (*Id.* ¶¶ 49–92.)

On February 3, 2017, the Port Authority moved to dismiss the action against it and LaGuardia Airport pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (Port Authority Mot. to Dismiss ("Port Authority Mot."), Docket Entry No. 18; Decl. of Allen Acosta in Supp. of Port Authority Mot. ("Acosta Decl."), Docket Entry No. 19; Port Authority Mem. in Supp. of Port Authority Mot. ("Port Authority Mem."), Docket Entry No. 20.) On July 14, 2017, the United States moved to dismiss the action against it and TSA pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (United States Mot. to Dismiss ("United States Mot."), Docket Entry No. 37; United States Mem. in Supp. of United States Mot. ("United States Mem."), Docket Entry No. 37-1; Decl. of Jared M. Addorisio in Supp. of United States Mot. ("Addorisio Decl."), Docket Entry No. 36-2.)

For the reasons set forth below, the Court grants the Port Authority's and the United States' motions to dismiss for lack of subject matter jurisdiction, dismisses the Complaint against all Defendants except Oquendo and grants Plaintiff leave to amend her claims against the United States.

I. **Background**

The Court assumes the truth of the factual allegations in the Complaint for the purposes of this Memorandum and Order. "On or about August 27, 2015," Plaintiff, a Korean college student who was then temporarily enrolled at an English language school in Utah, arrived at LaGuardia Airport on an inbound flight from Salt Lake City. (Compl. ¶¶ 15–16.) As Plaintiff was walking out of the airplane gate, Oquendo, a TSA officer, approached Plaintiff and told her that he needed to scan her body and luggage. (*Id.* ¶ 17.) Oquendo directed Plaintiff to follow

2

him up an escalator and motioned for Plaintiff to enter a men's bathroom. (*Id.* ¶ 18.) Plaintiff was confused, but acquiesced after requesting that a female TSA employee screen her instead. (*Id.* ¶ 19.) Oquendo refused, and ordered Plaintiff to unzip and take off her shorts and her t-shirt. (*Id.* ¶¶ 19–20.) He then fondled Plaintiff's breasts "and other areas of her body, both over and under her clothing." (*Id.* ¶ 20.) Plaintiff was "extremely nervous, terrified and uncomfortable but felt that she was not free to refuse Oquendo's demands" because he was in TSA uniform and she was not aware of TSA procedures. (*Id.* ¶ 22.) After the incident, Oquendo escorted Plaintiff toward an elevator and told her to enter it. (*Id.* ¶ 23.) He pressed the buttons to a lower floor and when the doors closed, with Plaintiff inside the elevator, Oquendo ran off in another direction. (*Id.*) Plaintiff found a TSA officer and reported what had happened, and that TSA officer told Plaintiff that she should report the incident to Port Authority Police Department because the incident violated TSA protocol. (*Id.* ¶¶ 24–25.) On the same day, Plaintiff reported the incident to Detective Sergeant Barbara Heim in the Criminal Investigations Bureau of the Port Authority Police Department. (*Id.* ¶ 26; Affidavit of Detective Sergeant Barbara Heim ("Heim Aff.") ¶¶ 5–6, Docket Entry No. 19-2.) The next day, Plaintiff was transported back to Port Authority Headquarters and identified Oquendo from a line-up. (Compl. ¶ 27.)

Within days of the incident, Oquendo was fired, arrested by the NYPD and arraigned on charges of sexual abuse, official misconduct, harassment and unlawful imprisonment. (*Id.* ¶ 29.) On December 7, 2016, Oquendo entered a conditional plea of guilty for attempted official misconduct, official misconduct and sexual abuse in the third degree. (*See* United States Mem. 2 (referring the Court to the criminal matter against Oquendo in New York Criminal Court, Queens County).)

3

## II. Discussion

### a. Standard of review

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)); *see also Chau v. S.E.C.*, 665 F. App'x 67, 70 (2d Cir. 2016). The plaintiff has the burden to prove that subject matter jurisdiction exists, and in evaluating whether the plaintiff has met that burden, "'[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations omitted), *aff'd*, 561 U.S. 247 (2010). A court may consider matters outside of the pleadings when determining whether subject matter jurisdiction exists. *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013); *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010).

### b. The Court lacks subject matter jurisdiction over Plaintiff's claims against the Port Authority

The Port Authority argues that it is immune from Plaintiff's suit because Plaintiff failed to commence her action within one year of the date on which the cause of action accrued.[3] (Port

---

[3] The Port Authority further argues that LaGuardia Airport is operated by the Port Authority under a lease with the City of New York, and, as such, "does not exist as a distinct legal entity and therefore is not a properly named party." (Port Authority Mem. 1 n.1.) Plaintiff does not address this argument, and the Court accordingly dismisses LaGuardia Airport from the action. *See Abrahams v. Young & Rubicam Inc.*, 79 F.3d 234, 237 n.2 (2d Cir. 1996) ("Given [the plaintiff's] representations to the district court . . . and the failure to make pertinent

Authority Mem. 3–4.) Plaintiff argues that she timely filed suit and, even if she did not, she is entitled to equitable tolling because the Port Authority "tricked" her into believing the claim accrued on August 27, 2015 rather than August 25, 2015. (Pl. Mem. in Opp'n to Port Authority Mot. ("Pl. Opp'n to Port Authority Mot.") 5, Docket Entry No. 27.)

The Port Authority is a "bi-state agency created by a compact between New York and New Jersey," and it "enjoyed sovereign immunity until 1951, when New York and New Jersey consented to suits against it in limited circumstances." *Caceres v. Port Auth. of N.Y. & N.J.*, 631 F.3d 620, 624 (2d Cir. 2011) (citing *Bunk v. Port Auth. of N.Y. & N.J.*, 144 N.Y. 176 (1996)). The Port Authority's statutory immunity was waived by identical New York and New Jersey statutes that "required a sixty-day notice of claim and commencement of suit within one year from the date of accrual of the cause of action." *See id.*; N.Y. Unconsol. Law § 7107 ("section 7107"). "These requirements are jurisdictional," and thus, the failure to satisfy them "will result in withdrawal of [the] defendant's consent to suit and compels the dismissal of the action for lack of subject matter jurisdiction." *Caceres*, 631 F.3d at 624–25 (citations omitted); *Aegis Ins. Servs., Inc. v. Port Auth. of N.Y. & N.J.*, 435 F. App'x 18, 25 (2d Cir. 2011) ("Sections 7107 and 7108 [of the New York Unconsolidated Law] constitute jurisdictional prerequisites to a suit against the Port Authority, and failure to comply with them compels dismissal of the action for lack of subject matter jurisdiction.").

Rule 6(a) of the Federal Rules of Civil Procedure governs the computation of any period of time "specified in [the Federal Rules], in any local rule or court order, *or in any statute that does not specify a method of computing time*." Fed. R. Civ. P. 6(a) (emphasis added). Rule

---

arguments here, we deem the claims waived."); *Innov. Ventures, LLC v. Ultimate One Distributing Corp.*, No. 12-CV-5354, 2014 WL 1311979, at *9 (E.D.N.Y. Mar. 28, 2014) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them.").

6(a)(1) provides that "[w]hen the period is stated in days or a longer unit of time," the court should "exclude the day of the event that triggers the period" and "include the last day of the period." *Id.* at 6(a)(1). The Second Circuit has further held that "when a statute of limitations is measured in years, the last day for instituting the action is the anniversary date of the start of the limitations period." *Mickens v. United States*, 148 F.3d 145, 148 (2d Cir. 1998) (citing *Day v. Morgenthau*, 909 F.2d 75, 79 (2d Cir. 1990), *as amended on reh'g* (Aug. 29, 1990)); *see also Thomas v. Harris*, No. 10-CV-4025, 2016 WL 4702443, at *4 (S.D.N.Y. Sept. 6, 2016) (quoting *Day*, 909 F.2d at 79); *Williams v. Zuk*, No. 09-CV-789, 2009 WL 909520, at *2 (N.D.N.Y. Apr. 3, 2009) (citing *Day*, 909 F.2d at 79).

The parties do not dispute that Plaintiff's claim accrued on August 25, 2015 rather than August 27, 2015, as the Complaint states,[4] or that Rule 6(a) prescribes the method of computing time in this action. *See Day*, 909 F.2d at 78 ("[O]nly the length of the limitation is governed by state law."); Fed. R. Civ. P. 6(a) (governing the computation of time for "any statute that does not specify a method of computing time"). Nor do the parties dispute that section 7107 waives the Port Authority's immunity from damages suits only where the lawsuit was "commenced within one year after the cause of action . . . accrued." N.Y. Unconsol. Law § 7107.

---

[4] The Port Authority annexes to its papers the incident report that Plaintiff completed on August 27, 2015, stating that the event occurred two days prior, on August 25, 2015. (*See* Plaintiff Incident Report, annexed to Heim Aff. as Ex. A.) Det. Sgt. Heim spoke with Plaintiff on August 25, 2015, when Plaintiff reported the incident at LaGuardia Airport, (*see* Heim Aff. ¶¶ 24–25), and, on August 27, 2015, the Plaintiff made her sworn written statement in English describing the incident before Det. Sgt. Heim and Detective David Narvaez, (*see* Aff. of David Narvaez ("Narvaez Aff."), Docket Entry No. 19-3). Both Det. Sgt. Heim and Det. Narvaez state that they witnessed Plaintiff review the contents of the form, that Det. Sgt. Heim explained the form and made sure that Plaintiff understood the meaning of it, and that Plaintiff described the incident as having taken place on August 25, 2015 and wrote the date in her own handwriting. (Heim Aff. ¶ 8; Narvaez Aff. ¶ 8.)

However, because the limitations period in section 7107 is expressed in years, "the last day for instituting [Plaintiff's] action [was] the anniversary date of the start of the limitations period," or August 25, 2016. *See Mickens*, 148 F.3d at 148. Plaintiff commenced this action on August 26, 2016 — one year and one day after the cause of action accrued, (*see* Compl.) — and has therefore failed to comply with a condition precedent to suit against the Port Authority.

Although Plaintiff argues that she is entitled to equitable tolling as a result of the Port Authority's allegedly improper conduct in handling the claim,[5] timing limitations that are jurisdictional in nature can "not be excused based on equitable factors." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 433 (2011); *see also Franklin v. McHugh*, 804 F.3d 627, 629 (2d Cir. 2015) (explaining that, "[l]ike other jurisdictional requirements, the timely filing

---

[5] Plaintiff argues that until filing the request for a pre-motion conference in anticipation of its motion, the Port Authority "was sitting on documents that it knew set forth a different incident date" — namely, August 25, 2015. (Pl. Opp'n to Port Authority Mot. 6.) Plaintiff argues that she filed a Freedom of Information Act request with the Port Authority that the Port Authority ignored, and "there was no possible way that the undersigned could have known that the incident actually took place on August 25, 2015, since the Port Authority was withholding all documents which would have alerted us to this fact." (*Id.* at 6–7.)

Although the law is clear that the Court is constrained and cannot provide equitable tolling for what Plaintiff contends is the Port Authority's trickery, the Court also notes that it was Plaintiff, and not the Port Authority, who initially identified the date of the incident as August 25, 2015 in her Incident Report, and it was Plaintiff's counsel, and not the Port Authority, who identified the date as August 27, 2015 in Plaintiff's notice of claim to the Port Authority. (*See* Plaintiff Incident Report; Notice of Claim dated Sept. 15, 2015, annexed to Compl. as Ex. A ("The claim accrued on August 27, 2015.").) Thereafter, the Port Authority did refer to the "date of incident" as August 27, 2015, but there are no facts to support Plaintiff's claim that the Port Authority willfully withheld information that was not available to Plaintiff.

Indeed, the Port Authority provides an affidavit from a claims representative, Carleen Hodge, who states that on December 4, 2015, she received paperwork from the Port Authority's Public Safety Department concerning the criminal complaint that Plaintiff made against Oquendo, as well as the supporting documents. (Affidavit of Carleen Hodge ("Hodge Aff.") ¶ 9, Docket Entry No. 29-1.) Upon reviewing the documents, Hodge states that she determined that the incident actually took place on August 25, 2015, and she contacted Plaintiff's counsel by telephone that day and left a voice message informing him that the notice of claim needed to be amended to reflect the correct date of the incident. (*Id.* ¶¶ 9–10.) Hodge did not receive any further correspondence or a return telephone call from Plaintiff's counsel. (*Id.* ¶ 10.)

7

mandate [of the Federal Rules of Appellate Procedure] is not subject to judicially created equitable exceptions."). Accordingly, because the Court cannot waive or otherwise exercise equitable powers in connection with jurisdictional requirements, and because section 7107's requirements are jurisdictional, *see Caceres*, 631 F.3d at 624–25, the Court lacks subject matter jurisdiction over Plaintiff's claim against the Port Authority. The Court, therefore, dismisses Plaintiff's claims against the Port Authority for negligent hiring, retention and supervision.

### c. The Court lacks subject matter jurisdiction over Plaintiff's claims against the TSA

The United States argues that, to the extent Plaintiff intended to bring a claim against the TSA, the Court lacks jurisdiction over the claim because the FTCA does not provide Plaintiff with a cause of action against the TSA and Plaintiff has not identified any other statutory predicate for a claim against the TSA. (United States Mem. 5–6.) Plaintiff argues that the FTCA provides a vehicle for claims against the United States, and because the TSA is part of the United States government, Plaintiff's claim should proceed. (Pl. Mem. in Opp'n to United States Mot. ("Pl. Opp'n to United States Mot.") 4–5, Docket Entry No. 36.)

The United States is generally immune from suit. *See United States v. Bormes*, 568 U.S. 6, 9 (2012) ("Sovereign immunity shields the United States from suit absent a consent to be sued that is 'unequivocally expressed.'" (quoting *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33–34 (1992))). Under the FTCA, "Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees while acting within the scope of their employment." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217–18 (2008). However, the FTCA precludes tort suits against federal agencies. *See* 28 U.S.C. § 2679(a) ("The authority of any federal agency to . . . be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under [the FTCA].") As a result,

"[t]he only proper institutional defendant in such an action is the United States." *Rivera v. United States*, 928 F.2d 592, 609 (2d Cir. 1991); *see Safonova v. United States*, No. 15-CV-5580, 2017 WL 1030708, at *3 (E.D.N.Y. Mar. 15, 2017) (quoting *Rivera*, 928 F.2d at 609); *Rambarrat ex rel. Rambarrat v. United States*, 347 F. Supp. 2d 6, 8 (S.D.N.Y. 2004) ("Section 2679(b)(1) provides Government agencies and employees with absolute immunity against common-law tort claims by requiring that the United States be substituted as a defendant in their stead."); *Stewart v. I.R.S.*, 157 F.R.D. 153, 155 (E.D.N.Y. 1994) (substituting the United States for the IRS as a defendant in the action because "the FTCA precludes tort suits against federal agencies" and "the only proper federal institutional defendant in such an action is the United States" (citing *Rivera*, 928 F.2d at 609)).

The TSA is a component of the Department of Homeland Security, a federal agency,[6] *see* 6 U.S.C. § 203(2), and therefore, Plaintiff's claim against the TSA is not cognizable under the FTCA. Because Plaintiff names the United States as a Defendant in this action and the United

---

[6] Under the FTCA, the term "federal agency" includes "the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States." 28 U.S.C. § 2671. The Department of Homeland Security is an executive department, and the TSA is listed among several other "operational and support components" that "make up" the Department of Homeland Security. *See* "Operational and Support Components," available at https://www.dhs.gov/operational-and-support-components (last accessed Aug. 1, 2017); *see also Qian Jin Lin v. Anderson*, No. 12-CV-451, 2013 WL 3776249, at *3 (S.D.N.Y. July 18, 2013) (substituting the United States as the proper defendant in an action against the Department of Homeland Security and Customs and Border Protection); *Ibrahim v. United States*, 868 F. Supp. 2d 27, 29 n.1 (E.D.N.Y. 2012) (dismissing the plaintiff's claims against the Department of Homeland Security and Customs and Border Protection because "[t]he FTCA expressly provides that only the United States may be held liable for torts committed by a federal agency, and not the agency itself").

States is "the only proper institutional defendant" in an FTCA action, *see Rivera*, 928 F.2d at 609, the Court dismisses Plaintiff's claim against the TSA brought under the FTCA.[7]

### d. The Court lacks subject matter jurisdiction over Plaintiff's claims against the United States

The United States argues that because Oquendo was not acting within the scope of his employment, Plaintiff's claims against the United States for supervisory liability fall within an exception to the FTCA's waiver of sovereign immunity. (United States Mem. 8.) In the alternative, the United States argues that the FTCA precludes the Court's jurisdiction over Plaintiff's claims against the United States arising from Oquendo's intentional torts of assault, battery and wrongful detention and imprisonment as well as the Court's jurisdiction over Plaintiff's claims for the TSA's failure to properly train and supervise Oquendo. (*Id.* at 12–16.) Plaintiff argues that the Court cannot determine whether Oquendo acted within the scope of his employment without permitting the parties to engage in discovery, and that her other claims against the United States under the FTCA do not merely arise from Oquendo's conduct but stem from independent negligent conduct of other TSA employees who, "upon information and belief . . . were present and/or standing watch." (Pl. Opp'n to United States Mot. 8–10.)

"The FTCA waives the government's sovereign immunity in actions for money damages arising out of injury, loss of property, personal injury or death caused by the 'negligent or

---

[7] To the extent that Plaintiff seeks to bring a state-law negligence claim against the TSA for "establishing, promulgating, and enforcing" unspecified "policies and practices" and "failing to properly train and/or supervise" Oquendo, (*see* Compl. ¶¶ 79–81), the Court lacks subject matter jurisdiction over the claim because Plaintiff has not identified any statute other than the FTCA, which precludes actions against federal agencies, that would authorize a claim against the TSA for state-law negligence. *See Diaz v. United States*, 517 F.3d 608, 611 (2d Cir. 2008) ("[T]he principle of sovereign immunity . . . absent a waiver, shields the federal government and its agencies from suit."); *Wake v. United States*, 89 F.3d 53, 57 (2d Cir. 1996) (explaining that sovereign immunity is "jurisdictional in nature," and, therefore, where a waiver of sovereign immunity is not explicit, an action against the sovereign defendant should be dismissed for lack of jurisdiction).

wrongful' act or omission of a government employee 'while acting within the scope of his office or employment . . . .'" *Fountain v. Karim*, 838 F.3d 129, 135 (2d Cir. 2016). The FTCA's "scope of employment" requirement is interpreted "in accordance with the *respondeat superior* law of the jurisdiction where the tort occurred." *Id.* (citing *Hamm v. United States*, 483 F.3d 135, 138 (2d Cir. 2007)). In New York, an employee acts within the scope of his employment when "(1) the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities, and (2) the employee is doing something in furtherance of the duties he owes to his employer." *Id.* (alterations and internal quotation marks omitted) (citing *Hamm*, 483 F.3d at 138).

Although the ultimate determination of whether an employee was acting within the scope of employment at a particular time typically involves a fact-intensive inquiry that assesses the relationship between the employee and employer in practice and the extent to which the act departed from normal methods of job performance, the Second Circuit has recognized that the determination "can be made as a matter of law in some instances." *See Girden v. Sandals Int'l*, 262 F.3d 195, 205 (2d Cir. 2001) (citation omitted); *see also Romero v. City of New York*, 839 F. Supp. 2d 588, 629 (E.D.N.Y. 2012) (making the scope-of-employment determination as a matter of law in the context of a sexual harassment claim).

This is because "in order for liability to attach, the tortious act must have in some way been effectuated to advance the employer's interest," *Tchatat v. City of New York*, 14-CV-2385, 2015 WL 5091197, at *17 (S.D.N.Y. Aug. 28, 2015) (quoting *Adams v. N.Y.C. Trans. Auth.*, 626 N.Y.S.2d 455, 460 (App. Div. 1995), *aff'd*, 88 N.Y.2d 116 (1996)), and "it is well settled" that unwelcome sexual conduct "is motivated solely by individual desires and serves no purpose of the employer," *Higgins v. Metro–N. R.R. Co.*, 318 F.3d 422, 426 (2d Cir. 2003); *see also Swarna*

11

*v. Al-Awadi*, 622 F.3d 123, 144 (2d Cir. 2010) (explaining that an employer "is not liable for torts committed by the employee for personal motives unrelated to the furtherance of the employer's business" (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995))); *Bello v. United States*, 93 F. App'x 288, 291 (2d Cir. 2004) ("New York law holds that [an employee] does not act within the scope of his employment when he acts in tortious conduct for personal reasons separate and distinct from the interests of his employer, particularly when the conduct involves acts not commonly done by those in his position.

"New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context." *Swarna*, 622 F.3d at 144 (quoting *Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998)). "Thus, for example, New York courts have rejected *respondeat superior* claims that a church was liable for its priest's sexual assault of a child, that a hospital was liable for its attendant's sexual assault o[f] a patient, that a school was liable for its volunteer-teacher's molestation of a student, and that [a] mall was liable for its security guard's rape of a girl in the mall security office." *Id.* (citations omitted) (collecting cases); *see also Zeranti v. United States*, 167 F. Supp. 3d 465, 469 (W.D.N.Y. 2016) (collecting cases holding that, as a matter of law, sexual assaults are not in furtherance of an employer's business); *N.X. v. Cabrini Med. Ctr.*, 97 N.Y.2d 24, 251 (2002) ("A sexual assault . . . is not in furtherance of [an employer's] business and is a clear departure from the scope of employment, having been committed for wholly personal motives.").

Here, Oquendo's conduct did not occur in the course of his employment as a TSA screening officer. As Plaintiff expressly alleges, Oquendo approached Plaintiff "in the area of the Airport terminal that does not require passengers to be screened," which was nowhere "near

any designated security checkpoint area in which passenger screening is or was permitted," and where Oquendo was not "not authorized to conduct secondary pat-downs." (Compl. ¶¶ 17, 21.) Oquendo "intentionally and deplorably abused his position" by directing Plaintiff to a bathroom and sexually assaulting her. (*Id.* ¶¶ 1, 18–20.) Plaintiff does not allege that Oquendo's conduct was in furtherance of his position as a TSA screener, and the Court need not permit discovery into whether his sexual assault of Plaintiff — conduct of a nature that New York courts routinely find outside the scope of employment — was within the scope of his employment for TSA. *See Swarna*, 622 F.3d at 144.

To the extent that Plaintiff attempts to state a claim against the United States under the FTCA independent of Oquendo's actions, the Court finds that Plaintiff has failed to make the necessary allegations to support such a claim. Plaintiff argues, without any factual support, that the United States "negligently allow[ed] a foreseeable assault and battery to occur" and that "the other TSA agents who were present . . . did nothing to stop this incident and/or aided and abetted the crime." (Pl. Opp'n to United States Mot. 10.) The Complaint is devoid of any allegations that other TSA agents were present or witnessed any part of what occurred. Because Plaintiff expressly acknowledges that that the Complaint "could, admittedly, be worded in a better way" and requests leave to amend, (*see id.* at 11), the Court grants Plaintiff leave to amend the Complaint only to the extent that Plaintiff can plead facts to support an independent claim against the United States for tortious conduct unrelated to that of Oquendo.

### III. Conclusion

For the foregoing reasons, the Court grants the Port Authority's and the United States' motions to dismiss and dismisses Plaintiff's claims against all Defendants except Oquendo. The Court grants Plaintiff leave to amend the Complaint within thirty days of this Memorandum and Order to allege facts sufficient to show that a TSA or United States employee aided and abetted Oquendo or negligently failed to prevent his conduct.

SO ORDERED:

\_\_\_\_\_s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: August 2, 2017
      Brooklyn, New York